Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Clarence WORD, Petitioner,
v.
Thomas CARROLL, Warden, and Attorney General of the
State of Delaware,
Respondents.
**No. Civ.A.03-538 JJF.**

Aug. 31, 2004.

Clarence Word, Smyrna, Delaware, Petitioner, pro se.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondents.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Petitioner Clarence Word is an inmate at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is the Petition For Writ Of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner. (D.I.1.) For the reasons set forth below, the Court will dismiss the Petition and will not issue a certificate of appealability.

BACKGROUND

In 1999, Petitioner was indicted on charges of possession with intent to deliver heroin and use of a dwelling for keeping controlled substances. Following a trial by jury in Delaware Superior Court, Petitioner was found guilty on both charges. The Superior Court sentenced Petitioner to five years mandatory imprisonment on the possession conviction and two years, suspended with decreasing levels of supervision, for the use of a dwelling conviction.

Following his conviction, Petitioner sought to appeal various issues from his trial. Based upon a disagreement regarding appealable issues with appointed counsel (hereinafter "Defense counsel"), Petitioner sought leave to pursue his direct appeal without representation. The Superior Court conducted a hearing regarding this request and concluded that Petitioner's waiver of his right to representation for appeal was done knowingly, voluntarily, and intelligently. *See State v. Word,* 2001 WL 755938 (Del.Super.Jan. 9, 2001). On June 19, 2001, the Delaware Supreme Court denied Petitioner's claims of error and affirmed his convictions. Subsequently, Petitioner filed a motion for post-conviction relief, which was denied by the Superior Court and affirmed by the Delaware Supreme Court. *Id.; Word v. State,* 825 A.2d 239, 2003 WL 21241336 (Del. May 27, 2003).

STANDARD OF REVIEW

A district court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before a court may reach the merits of a habeas petition, it must first determine whether the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are satisfied. The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Prior to seeking habeas relief, a state petitioner must exhaust the remedies available in the state courts. To satisfy this requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted). This exhaustion principle is predicated on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000) (citing *Caswell v. Ryan,* 953 F.2d 853, 857 (3d Cir.1992)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 2
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

**\*2** A petitioner fairly presents a claim to the state's highest court for purposes of exhaustion by asserting a legal theory and facts that are substantially equivalent to those contained in the federal habeas petition. *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996) (citing *Bond v. Fulcomer,* 864 F.2d 306, 309 (3d Cir.1989)). Additionally, fair presentation requires the petitioner to raise the claim in a procedural context in which the state courts will consider it on the merits. *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

If a petitioner has exhausted his state remedies, the AEDPA also prescribes the standard by which a court may review the merits of a habeas claim. In relevant part, the AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has interpreted Section 2254(d) to require courts to review state court convictions under two independent inquiries. A federal court must decide whether the state court's decision was 1) "contrary to," or 2) involved an "unreasonable application" of, clearly established Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). [FN1] To be considered "clearly established," the relevant legal rule must be included in the holding of a decision by the Supreme Court, and not merely dicta, and exist at the time of the state court's decision. *Id.* at 412.

> FN1. In *Williams,* Justice O'Connor, writing for the majority, held that a state court decision may be considered "contrary to" Supreme Court precedent in one of two ways. First, a state court's decision will be contrary to Supreme Court precedent if it

reaches a conclusion that is opposite to that reached by the Supreme Court on a question of law. *Id.* at 405. Additionally, a state court decision will be contrary to established Supreme Court precedent if the state court is faced with facts "materially indistinguishable" from a relevant Supreme Court precedent yet comes to an opposite conclusion. *Id.*

In interpreting "unreasonable determination," Justice O'Connor did not provide a precise definition of the term, but held that an "unreasonable determination" is not the equivalent of an "incorrect" application of Supreme Court precedent. *Id.* at 410. Further, Justice O'Connor stated that although it is difficult to define the term "unreasonable," federal judges are familiar with its meaning. *Id.* at 410. Thus, an "unreasonable determination" within the meaning of Section 2254(d) will occur when a state court unreasonably applies Supreme Court precedent to the facts of the case before it. *Id.* at 409.

DISCUSSION

I. Parties' Contentions

By his Petition, Petitioner asserts six grounds for relief: 1) the search and seizure of the heroin from his mother's residence was conducted in violation of the Fourth Amendment; 2) the chain of custody for the heroin was broken and the drugs admitted into evidence were tampered with; 3) the Superior Court abused its discretion by failing to give the jury curative instructions following Officer DiClementi's testimony about Petitioner's past drug use and shoplifting charge; 4) ineffective assistance by Defense counsel; 5) Defense counsel failed to search for legal errors for appeal; and 6) the Superior Court incorrectly concluded that Petitioner knowingly and voluntarily waived his right to counsel for appeal.

Respondents contend that Petitioner's first claim presents a Fourth Amendment issue that cannot be raised on collateral review. With respect to Petitioner's second claim, Respondents contend that this is a question of state evidentiary law and does not present a federal constitutional issue. Respondents further contend that Petitioner's second

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 3
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

claim and third claim should be denied because Petitioner did not comply with state procedural requirements. Next, Respondents contend that Petitioner's fourth claim, ineffective assistance of trial counsel, is unavailing because Petitioner cannot rebut the presumption that his counsel's representation was reasonable or that he suffered prejudice as a result of the representation. Respondents maintain that Petitioner's fifth claim fails because counsel is not required to proceed with a frivolous appeal merely to satisfy his or her client. Respondents contend that Petitioner's sixth claim also fails because he knowingly and voluntarily waived his right to the assistance of counsel. Respondents state that Petitioner exhausted his state remedies on all of the claims raised by his Petition.

II. Decision

A. *Illegal Search and Seizure*

**\*3** Petitioner's first claim alleges that the search and seizure of the drugs in his mother's residence was unconstitutional because it was carried out without a valid warrant, there was no written consent to search prior to the search, and any verbal consent obtained from his mother was procured through deception. On direct appeal and in a post-conviction relief motion, the Delaware Supreme Court and the Superior Court, respectively, rejected Petitioner's Fourth Amendment claim.

The Supreme Court in *Stone v. Powell,* 428 U.S. 465 (1976), held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494-95. On the record before it, the Court finds no evidence that Petitioner was denied the opportunity to file a pretrial motion to suppress. Rule 41 of the Delaware Superior Court Rules of Criminal Procedure provides that a defendant may file a pretrial motion to suppress evidence; however, Petitioner did not file any such motion. Additionally, Petitioner raised this claim on direct appeal and in a post-conviction relief motion and it was rejected by both courts. Accordingly, the Court concludes that Petitioner had a full and fair opportunity to

litigate his first claim, and therefore, the Court will deny Petitioner's claim pursuant to *Stone v. Powell.*

B. *Chain of Custody*

By his second claim, Petitioner asserts that his Fourteenth Amendment and Due Process rights were violated because the State failed to properly establish a chain of custody for the heroin seized in his mother's residence and introduced at trial. Specifically, Petitioner contends that the heroin was tampered with and that there is a discrepancy between the weight of the heroin in the medical examiner's report and the police report.

In response, Respondents contend that, although Petitioner exhausted this claim, the Court should not reach its merits because Petitioner is procedurally barred by his failure to object to the State's establishment of the chain of custody at trial.

When reviewing a habeas petition, a federal court will not address a claim under federal law if, when the claim was presented to the state courts, the state courts rejected the claim on a ground that was both independent and adequate. *Cabrera v. Barbo,* 175 F.3d 307, 312 (3d Cir.1999). A refusal by a state court to address a federal claim for failure to meet a state procedural rule is both independent and adequate. *Id.* (citing *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991)). In the instant case, the Delaware Supreme Court held that Petitioner raised this claim for the first time on appeal, and therefore, would only be reviewed for plain error. *Word,* 2001 WL 762854, at \* \*3.

The Delaware Supreme Court's holding that Petitioner failed to raise this claim at trial, and subsequent review only for "plain error" pursuant to Delaware Supreme Court Rule 8, is an independent and adequate state law ground procedurally barring this claim. *McLaughlin v. Carroll,* 270 F.Supp.2d 490, 517-18 (D.Del.2003) (citing *Lawrie v. Snyder,* 9 F.Supp.2d 428, 452-54 (D.Del.1998)). Thus, unless Petitioner can demonstrate 1) cause for the procedural default and actual prejudice; or 2) a fundamental miscarriage of justice, the Court may not consider the merits of Petitioner's chain of custody claim. *Id.* at 501 (citations omitted).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

**\*4** Petitioner alleges that he has demonstrated cause to excuse his procedural default because the state did not turn over the medical examiner's report until minutes before trial began. Even accepting Petitioner's allegations of prosecutorial misconduct as true, the Court concludes that Petitioner cannot demonstrate actual prejudice. A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 494 (1986) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original)).

In this case, Petitioner's allegation of an improper chain of custody derives from discrepancies between the weight of the drugs in the medical examiner's report and the police report. However, the Court concludes that any such discrepancy is irrelevant, and thus cannot establish actual prejudice, because the two charges that Petitioner was convicted of, 16 Del. C. §§ 4751, 4755(a)(5), were not contingent on any specific weight of heroin.

The Court also concludes that Petitioner has not demonstrated a fundamental miscarriage of justice. To establish a fundamental miscarriage that will excuse a procedural default, a petitioner must show that " 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." ' *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)). The miscarriage of justice inquiry is concerned with actual innocence and not legal innocence. *Id.* (citing *Sawyer v. Whittley,* 505 U.S. 333, 339 (1992)).

Petitioner's assertion of a miscarriage of justice is also based on the discrepancies between the medical examiner's report and the police report. Apart from the fact that Petitioner's assertion of error is based on state law, which generally will not result in the grant of habeas relief, *see Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Rose v. Hodges,* 423 U.S. 19, 21-22 (1975) (*per curiam* ), the Court is not persuaded that such discrepancies would preclude any

reasonable juror from finding him guilty beyond a reasonable doubt on the charges for which he was convicted, particularly because his convictions were not reliant on any specific weight of heroin. Accordingly, the Court concludes that Petitioner has not made an adequate showing to excuse his procedural default.

C. *Absence of Curative Instruction*

The Court concludes that it must also deny Petitioner's third claim for relief. Petitioner contends that the Superior Court committed constitutional error by not giving the jury a curative instruction following Defense counsel's elicitation of testimony about Petitioner's history of drug use and a shoplifting charge. Respondents contend that this claim is procedurally barred because Petitioner made no objection to this testimony at trial.

**\*5** As an initial matter, the Court agrees with Respondents that Petitioner's third claim is procedurally barred. In its Order, the Delaware Supreme Court reviewed Petitioner's claim pursuant to the "plain error" standard that it applied to all of the claims Petitioner had not preserved for appeal. *See Word,* 2001WL 762854, * *2-3. Thus, in order to excuse this procedural bar, Petitioner must demonstrate cause and actual prejudice or a miscarriage of justice. *See McLaughlin,* 270 F.Supp.2d at 517-18.

The Court concludes that Petitioner has not demonstrated that the procedural bar should be excused. First, Petitioner has asserted no objective external factor that precluded him from objecting to the absence of a curative instruction. Certainly, any such objection would have been unusual, as it was Defense counsel who elicited the testimony Petitioner now complains of. Additionally, the Court is not persuaded that no reasonable juror would have convicted Petitioner of the crimes charged if they had not heard testimony about his past drug use and shoplifting charge. *Cristin,* 281 F.3d at 420. [FN2] Accordingly, Petitioner is procedurally barred from advancing his claims.

> FN2. In further support of this conclusion is the trial testimony of Detective Rodriguez. Detective Rodriguez testified that, in response to questioning, Petitioner admitted that the heroin found in his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 5
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

mother's residence was his and that he sold it for $15 a bag. (April 13, 2000 Trial Transcript at 77-78.)

Moreover, even if the Court were to assume that the Delaware Supreme Court did not provide a plain statement that Petitioner was procedurally barred from raising this claim, the Court agrees with the rationale of the Delaware Supreme Court and finds that Petitioner suffered no constitutional injury by the Superior Court's decision not to give a curative instruction. *Word,* 2001 WL 762854, * *3. The testimony Petitioner now complains of was elicited by Defense counsel. (D.I. 3 at A-159.) In addition, the Superior Court, following this elicitation by Defense counsel, removed the jury and engaged in a colloquy with Defense counsel regarding the prejudicial nature of this testimony. *Id.* at A-153-55, 160-63, 156-59. Defense counsel did not request a curative instruction from the Superior Court judge and instead decided to clarify the earlier testimony with further questioning before the jury. Defense counsel informed the Superior Court that his elicitation of this testimony was part of his trial strategy. (D.I. 3 at A-153-55, 160-63, 156-59.) Based on this record, the Court concludes that the Superior Court's decision not to give the jury a curative instruction was not in error, and consequently, not contrary to, nor did it involve, an unreasonable application of clearly established law.

D. *Ineffective Assistance of Counsel*

Petitioner's fourth claim, ineffective assistance of counsel, is premised on various alleged deficiencies in Defense counsel's representation, including: 1) failure to investigate and adequately prepare for trial, including the decision not to retain an expert witness; 2) failure to file a motion to suppress and a motion to request immunity for Petitioner's brother; 3) failure to object to preserve issues for appeal; and 4) opening the door to bad character evidence.

**\*6** In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court established the standard for reviewing ineffective assistance of counsel claims. In order for a petitioner to succeed on such a claim, he or she must establish that: 1) defense counsel's performance was deficient; and 2) but for this deficient performance, the result of the proceeding would have been different. *Id.* at 687, 694. When evaluating performance, review must be highly deferential and courts must, to the extent possible, view the performance without "the distorting effects of hindsight." *Id.* at 689. Further, a petitioner must identify specific errors in counsel's representation and courts should recognize a strong presumption that counsel's performance was adequate. *Id.* at 690.

1. *Character Evidence*

As discussed above, Defense counsel "opened the door" to Petitioner's past drug use and shoplifting charge in Petitioner's case in chief. Petitioner contends that this action was unreasonable and negatively colored the jurors' evaluation of his character. After a review of the trial record, the Court concludes that Defense counsel's decision to open the door to this evidence was a trial strategy within his discretion.

In a colloquy with the Superior Court outside the presence of the jury, Defense counsel informed the judge that he engaged in this line of questioning to support the defense theory that Petitioner was a probationer, and therefore, the drugs discovered by the police were likely not his because, as a probationer, he would be randomly tested for drug use. (D.I. 3 at A-153-55, 160-63, 156-59.) Because this was a strategy decision made by Defense counsel at trial, based on controlling precedent granting wide latitude for such decisions, *Strickland,* 466 U.S. at 689, the Court concludes that Defense counsel's opening the door to this evidence does not establish the first prong of the *Strickland* test. [FN3]

> FN3. The Court concludes that Petitioner's claim that Defense counsel erred by not calling an expert witness to present testimony that a heroin "user could use countless bags [of heroin] a day" must be rejected on similar grounds. The decision of what witnesses to call at trial is within the bounds of the broad discretion granted to counsel that a reviewing court will not second guess without persuasive evidence (which Petitioner has not provided) that an attorney abused that discretion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1941342 (D.Del.)

**(Cite as: 2004 WL 1941342 (D.Del.))**

2. *Decision Not to File Motions and Not to Preserve Issues for Appeal*

With respect to Petitioner's assertion that Defense counsel's representation was unreasonable because he failed to file a motion to request immunity for Petitioner's brother, the Court finds this claim to be without merit. Petitioner maintains that had the Superior Court granted such a motion, his brother would have testified that the drugs were his.

Aside from the incentive to commit perjury that such a grant of immunity would provide to a witness, the Court is unaware of any authority providing that a trial judge should grant immunity under the circumstances of this case. Accordingly, the Court concludes that Petitioner has not established that Defense counsel's decision not to file a motion for immunity was unreasonable.

Next, the Court concludes that Defense counsel's decision not to file a motion to suppress was also reasonable. In a letter memorandum and affidavit to the Superior Court, Defense counsel stated that he did not file a motion to suppress because the Petitioner's mother had given consent to a search of her residence. (D.I.3, Ex. A.) At trial, Petitioner's mother testified that, although she did not sign a written consent for the search, she gave the officers verbal consent. (D.I. 3 at A-82-83.) Based on this testimony, Defense counsel believed that filing a motion to suppress would be frivolous. On this record, the Court concludes that Defense counsel's decision not to file a meritless suppression motion was reasonable. *See United States v. Brown,* 2003 WL 277256, *3 (D.Del. Feb. 5, 2003)(recognizing that "it is not ineffective assistance of counsel to fail to raise a meritless claim")(citing *Strickland,* 466 U.S. at 691).

**\*7** Petitioner also asserts that Defense counsel's failure to object to the testimony about his shoplifting charge violated his constitutional rights because it deprived him of the opportunity to appeal the introduction of this testimony. The Court must also reject this claim because it was Defense counsel who elicited this testimony, and therefore, he could not have objected to his own actions. [FN4]

FN4. Additionally, Petitioner contends that Defense counsel's representation was unreasonable because he did not search the record for issues to appeal. Petitioner has not, however, provided any support for this assertion. Further, a review of the exhibits in the appendix to his brief in support of the writ of habeas corpus persuade the Court that Defense counsel reviewed the trial record and in good faith believed that there were no non-frivolous issues for appeal. (D.I. 3 at A-191, Ex. A.) Based on these facts, the Court concludes that Petitioner has not established that Defense counsel's search for appealable issues was unreasonable.

3. *Inadequate Preparation and Investigation*

Petitioner's remaining ground of inadequate preparation by Defense counsel relates to his decision not to interview any of the State's witnesses. In a letter memorandum and affidavit Defense counsel sent to the Superior Court, Defense counsel argues that he decided not to interview the State's witnesses because "[t]here was no need to contact the State's witnesses[; he] had their reports." (D.I.3, Ex. A.) Additionally, Defense counsel states that "[t]he record will show that all of the State's witnesses were effectively cross examined." *Id.*

The Court is surprised by Defense counsel's assertion that, even without interviewing any of the State's witnesses, he was able to conduct "effective" cross-examinations. However, even if the Court is to assume that Defense counsel's decision not to interview the State's witnesses was unreasonable, *see Nealy v. Cabana,* 764 F.2d 1173, 1177 (5th Cir.1985) ("[A]t a minimum, counsel has the duty to interview potential witness and to make an independent investigation of the facts and circumstances of the case.") (citations omitted), the Court concludes that Petitioner has not established the second prong of the *Strickland* test.

The prejudice identified by Petitioner based on Defense counsel's decision not to interview the State's witnesses is Defense counsel's decision not to file a motion to suppress the fruits of the search of his mother's residence. However, as discussed above, the Court concludes that Petitioner's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

mother's consent justified Defense counsel's decision not to file a motion to suppress. And, as Petitioner cannot establish that this evidence was admitted in error, the Court must deny the claim of ineffective assistance due to Defense counsel's lack of preparation and investigation.

E. *Waiver of Appellate Counsel*

On December 19, 2000, the Superior Court held a hearing to determine whether Petitioner's request to waive counsel and proceed *pro se* on appeal was voluntary and intelligent. After questioning Petitioner about his request, the Superior Court found that he was aware of the dangers of his decision and granted Petitioner's request. (Transcript of Superior Court Hearing on December 19, 2000 ("Super.Ct.Tr.") at 14.) Petitioner contends that this decision by the Superior Court violated his constitutional rights because the Superior Court never inquired into why he wanted to proceed *pro se.*

When a defendant requests to proceed without representation on appeal, the waiver of counsel must be made knowingly and intelligently. *Swenson v. Bosler,* 386 U.S. 258, 260 (1967); *Faretta v. California,* 422 U.S. 806, 835 (1975); *United States v. Rundle,* 295 F.Supp. 613, 615 (E.D.Pa.1969)(quoting *Swenson,* 386 U.S. at 260). In the Third Circuit, if a defendant seeks new counsel or, in the alternative, to represent him or herself, a court must conduct a two-part inquiry. *Government of the Virgin Islands v. James,* 934 F.2d 468 (3d Cir.1991)(citing *United States v. Welty,* 674 F.2d 185, 187-88 (3d Cir.1982), and *McMahon v. Fulcomer,* 821 F.2d 934, 942 (3d Cir.1987)). [FN5] First, a court must decide if a defendant's request for substitute counsel constitutes good cause and justifies a continuance of trial in order to appoint new counsel. Second, if good cause is not shown, a defendant has the choice of continuing with existing counsel or proceeding *pro se.* If a defendant chooses to proceed without counsel, a court must inquire into whether the waiver was knowingly and intelligently made. *United States v. Welty,* 674 F.2d 185, 188 (3d Cir.1982).

> FN5. Although *Welty* was decided on a direct appeal from a conviction in the district court, the Third Circuit has held that the *Welty* two-party inquiry also applies to federal habeas review of

state court proceedings. *Bulh v. Cooksey,* 233 F.3d 783, 798 n. 17 (3d Cir.2000)(citing *Piankhy v. Cuyler,* 703 F.2d 728, 731 n. 3 (3d Cir.1983)).

**\*8** As in *James,* in the instant case Petitioner did not request substitute counsel. Nevertheless, the Court must determine whether the Superior Court conducted at least a minimal inquiry into the basis for Petitioner's objection to counsel. *James,* 934 F.2d at 471. Although the Superior Court never directly asked Petitioner whether he desired substitute counsel for his direct appeal, a review of the record persuades the Court that the Superior Court's colloquy with Petitioner at the December 19, 2000, hearing was sufficient to determine that good cause for substitution of counsel did not exist.

Good cause for substitute counsel may be shown if a defendant can demonstrate "a conflict of interest, a complete breakdown of communication or an irreconcilable conflict with his attorney." *James,* 934 F.2d at 471 (citing *Welty,* 674 F.2d at 188). During his colloquy with the Superior Court judge, Petitioner stated that he and Defense counsel did not see "eye to eye" on various issues at trial and that he disagreed with Defense counsel that he had no appealable issues of merit. (Super. Ct. Tr. at 6-8.) Petitioner advised the Superior Court that he believed the search of his mother's residence was "illegal," and therefore, constituted a valid issue for appeal. (Super. Ct. Tr. at 6-9.) [FN6]

> FN6. Petitioner also stated that he believed his Sixth Amendment rights were violated because Defense counsel was not present at a hearing where he believed the court ruled that he was not entitled to know the identity of a confidential informant. Petitioner did not, however, present this issue in the instant habeas petition, and therefore, the Court presumes that Petitioner subsequently decided that this Sixth Amendment claim was without merit. Accordingly, the Court concludes that the fact that Petitioner stated that he planned to file an appeal based on this issue does not qualify as good cause for substitute counsel.

Based on the Petitioner's statements to the Superior Court regarding why he desired to proceed *pro se,* the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1941342 (D.Del.)

**(Cite as: 2004 WL 1941342 (D.Del.))**

Page 8

concludes that the Superior Court's inquiry was sufficient to determine that good cause for substitution of counsel did not exist. *See James,* 934 F.2d at 471 (holding that a petitioner's failure to advance any reason that would constitute good cause, along with the petitioner's desire to terminate his present counsel for lack of enthusiasm and his unfavorable view of counsel's legal abilities were sufficient to determine that good cause did not exist). As in *James,* in this case Petitioner did not advance any reason that would constitute good cause for substitute counsel. Moreover, as discussed above, the Court has concluded that Petitioner's illegal search claim is without merit because Petitioner's mother gave oral consent for the search. Thus, the Court concludes that Petitioner's disagreement with Defense counsel about whether his appeal had merit did not constitute "good cause" for substitute counsel.

With respect to the second *Welty* inquiry, whether the waiver was knowing and intelligent, the Court concludes that the Superior Court's finding that Petitioner's waiver was knowing, voluntary, and intelligent, was not contrary to, nor did it involve, an unreasonable application of clearly established law. During its colloquy with Petitioner, the Superior Court inquired: 1) whether Petitioner desired to proceed *pro se* on his direct appeal; 2) whether Petitioner was indigent; 3) whether Petitioner believed he had an adequate understanding of the appeal process; 4) whether Petitioner had consulted with any other person, including an attorney, regarding his decision; 5) the reason why Petitioner wanted to proceed without Defense counsel; and 6) whether Petitioner believed he could properly prosecute his appeal and raise important issues. (Super. Ct. Tr. at 4-14.) After listening to Petitioner's answers and the reasons for his request to proceed *pro se,* the Superior Court stated that it was "satisfied" that Petitioner was aware of the dangers and consequences of his decision. Super. Ct. Tr. at 14.

**\*9** On this record, the Court concludes that the Superior Court's decision to permit Petitioner to proceed *pro se* was not "contrary to," nor did it involve an unreasonable application of, clearly established law that his waiver of counsel be knowing and intelligent. *See Williams,* 529 U.S. at 404-05. The Superior Court correctly advised Plaintiff of the procedural difficulties he might face on appeal and the dangers surrounding his decision. *See* Super. Ct. Tr. at 10-14. Accordingly, the Court will deny Petitioner's claim.

F. *Certificate of Appealability*

Finally, the Court must determine whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner is entitled to a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has interpreted "substantial showing" to mean whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." ' *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n. 4 (1983) (inner quotations omitted)).

For the reasons set forth in this Memorandum Opinion, the Court concludes that Petitioner has not made the requisite showing of a denial of a constitutional right. Accordingly, the Court will not issue a certificate of appealability.

CONCLUSION

For the reasons discussed, the Court will dismiss the instant Petition and deny the relief requested therein. Additionally, the Court will not issue a certificate of appealability.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this 31st day of August, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (D.I.1), filed by Petitioner Clarence Word is *DISMISSED,* and the relief requested therein is *DENIED;*

2) The Court declines to issue a certificate of appealability

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 9
2004 WL 1941342 (D.Del.)
**(Cite as: 2004 WL 1941342 (D.Del.))**

for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

2004 WL 1941342 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00538 (Docket) (Jun. 04, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.