IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN TURNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 04-1561-KAJ |
| | ) | |
| THOMAS CARROLL, Warden, and | ) | |
| CARL C. DANBERG, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

# MEMORANDUM OPINION

---

Brian Turner. *Pro se* Petitioner.

Elizabeth R. McFarlan, Esq., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

June 27, 2006
Wilmington, Delaware



JORDAN, District Judge

## I. INTRODUCTION

Petitioner Brian Turner ("Turner") is incarcerated at the Delaware Correctional Center in Smyrna, Delaware. Turner filed the pending petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons discussed, I will dismiss his petition. (D.I. 1)

## II. PROCEDURAL AND FACTUAL BACKGROUND

On May 2, 2002, the police were called to investigate a shooting at a residence owned by Turner's sister, which was located on Bunche Boulevard in Wilmington, Delaware. Upon their arrival, the police found one homicide victim inside the residence and one homicide victim outside. Witnesses told the police that three men in a gray vehicle drove up to the residence and fired a weapon, striking the two victims. Turner was staying with his sister at the time of the shooting, but he was not a suspect in the crime.

On May 6, 2002, while investigating the homicides, the police discovered that one of the victims may have been in possession of a gun at the time of the shooting. Based on this information, the police applied for and obtained a warrant to search the Bunche Boulevard address for firearms and ammunition. When they arrived at the residence, the police encountered Turner, and informed him that they were there to search the residence. Turner asked if he could put on his pants, and the police responded affirmatively. Turner became very nervous once his pants were on, causing the police to search him. The police found cocaine in the pants, and they also found a

bag with more cocaine under the rear shed, along with numerous personal documents bearing Turner's name. The police arrested Turner, and thereafter, a grand jury issued an indictment charging him with trafficking 50-100 grams of cocaine (DEL. CODE ANN. tit. 16, § 4753A) and maintaining a dwelling for keeping a controlled substance (DEL. CODE ANN. tit. 16, § 4755).

Prior to trial, Turner moved to suppress the evidence against him. The Superior Court denied the motion after conducting a suppression hearing. Turner then stipulated to the facts of the case. A Delaware Superior Court judge, sitting without a jury, convicted Turner of trafficking in cocaine, and the State entered a *nolle prosequi* on the maintaining a dwelling charge. The Superior Court sentenced Turner to seven years of incarceration, suspended after five years for probation. *See Turner v. State*, 826 A.2d 289, 290 (Del. 2003). Turner appealed, and the Delaware Supreme Court affirmed his conviction and sentence. *Id*.

In December 2003, Turner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied. The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal. *Turner v. State*, 2004 WL 1535764 (Del. July 6, 2004).

Turner filed the pending application for federal habeas relief. (D.I. 1) The State filed an Answer, contending that the application should be dismissed because the claims fail to warrant federal habeas relief. (D.I. 12)

Turner's habeas petition is ready for review.

## III.     LEGAL PRINCIPLES

### A.     Exhaustion and procedural default

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Prior to seeking habeas relief from a federal court, a petitioner in custody pursuant to a state court judgment must exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a petitioner must demonstrate that the substance of the federal habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. See *Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997). If the highest state court "clearly and expressly" refused to review the merits of a claim due to an independent and adequate state procedural rule, the claim is considered exhausted but procedurally defaulted. See *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner demonstrates actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," a federal court may excuse a procedural default to prevent a fundamental miscarriage of justice. *Murray,* 477 U.S. at 496; *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial." *Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004).

### B.  Standard of review under AEDPA

If a federal habeas claim is exhausted and not procedurally defaulted, and the highest state court adjudicated its merits, then the federal habeas court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A state court adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004) (internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 375 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. *Id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Turner asserts three claims for relief in his habeas petition: (1) his conviction was the result of evidence seized pursuant to an unconstitutional search and seizure because there was no probable cause for the search warrant; (2) the state courts failed to consider all the facts in determining that the search warrant was valid; and (3) counsel provided ineffective assistance by failing to argue at trial and on appeal that the police used false information in the warrant affidavit and also misled the magistrate.

### A.  Claims one and two are barred under *Stone v. Powell*

Claims one and two allege violations of the Fourth Amendment. In his first habeas claim, Turner contends that the search warrant lacked probable cause because the "affidavit [supporting the warrant application] did not identify either the source of the information or the source's reliability." (D.I. 3 at 6-7) In his second claim, Turner contends that the state courts did not consider all the relevant facts in upholding the search warrant, namely, that the May 6th search warrant was the second search warrant and the police had already discovered a gun during their May 2nd investigation. (D.I. 3 at 11-13)

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), federal courts cannot provide habeas review of a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held ... that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct

6

review."). A petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure. See U.S. ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977). A petitioner can avoid application of the Stone bar on habeas review only by demonstrating the existence of a structural defect in the state system which prevented the state courts from fully and fairly hearing his Fourth Amendment claim. Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

In the instant situation, Turner filed a pre-trial suppression motion, arguing that the search warrant was invalid because the information which formed the basis for the warrant was stale and non-specific, and also because there was nothing illegal about the gun which was the object of the warrant. The Superior Court conducted an evidentiary hearing and denied the suppression motion. On direct appeal, Turner argued that the object of the search was improper, the warrant lacked probable cause, and the information in the warrant affidavit was stale. The Delaware Supreme Court rejected Turner's arguments and affirmed the Superior Court's judgment. Based on this record, I conclude that the Delaware courts provided Turner with an adequate forum to present his Fourth Amendment claims.

Nevertheless, Turner attempts to demonstrate that he was denied a fair and full opportunity to litigate his claims in state court by pointing to two errors he says were perpetuated by the Delaware Supreme Court in its decision affirming the Superior Court's denial of the suppression motion. First, he contends that the Delaware Supreme Court did not analyze the issue of probable cause under the doctrines

announced in *Illinois v. Gates*, 462 U.S. 213 (1983) and *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978). However, this argument fails to overcome the *Stone* bar because an erroneous or incomplete state court determination of a Fourth Amendment claim does not demonstrate the existence of a structural defect in the state procedure used to review Fourth Amendment claims. *Marshall*, 307 F.3d at 82; *see also Gilmore v. Marks*, 799 F.2d 51, 56-7 (3d Cir. 1986).

Turner also argues that he was denied a full and fair opportunity to litigate his Fourth Amendment claims because the Delaware Supreme Court did not expressly consider the fact that the May 6th warrant was the second warrant issued within a four-day period or the fact that the police retrieved a gun from the residence on May 2nd. (D.I. 3) However, the transcript of the suppression hearing demonstrates that the prosecutor informed the Superior Court about the first warrant issued on May 2nd as well as the discovery of a gun on that same day. In turn, these facts were part of the record upon which the Delaware Supreme Court based its decision affirming the Superior Court's judgment. I therefore conclude that the Delaware Supreme Court's failure to explicitly discuss the May 2nd warrant or gun discovery does not demonstrate that the state courts failed to provide Turner with a "full and fair opportunity" to litigate the issue. Accordingly, I will deny Turner's two Fourth Amendment claims as barred by *Stone*.

I also note that I am precluded from reviewing claim two because it is procedurally defaulted. After the Superior Court denied his Rule 61 motion, Turner filed a motion for reconsideration, arguing that the trial court failed to consider the fact that the warrant in question was the second search warrant and that the police had already

obtained a gun from the residence. However, Turner filed a notice of appeal soon after filing the reconsideration motion, causing the Superior Court to summarily dismiss the reconsideration motion for lack of jurisdiction. Turner did not raise the factual omissions in his post-conviction appeal, and the Delaware Supreme Court explicitly stated that "[t]o the extent Turner has not argued other grounds to support his appeal that were previously raised, those grounds are deemed waived and will not be addressed by this Court." *Turner*, 2004 WL 1535764, at *1.

Here, by explicitly stating that previously argued claims were waived due to Turner's failure to raise the claims on post-conviction appeal, the Delaware Supreme Court plainly stated that its decision rested on state law grounds. *Harris v. Reed*, 489 U.S. 255, 263-265. (1989). This court has consistently held that Delaware's waiver rule constitutes an independent and adequate state ground precluding federal habeas review. *See McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 512 (D. Del. 2003); *Carter v. Neal*, 910 F. Supp. 143, 151-52 (D. Del. 1995). Therefore, claim two is procedurally defaulted, and even if the claim were somehow cognizable, I cannot review its merits absent a showing of cause for the procedural default and actual prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of such review. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Turner does not allege any reason for his failure to present claim two to the Delaware Supreme Court in his appeal of his Rule 61 motion. In the absence of cause, I will not address the issue of actual prejudice. Turner also has not presented any colorable evidence of his actual innocence. Thus, he has failed to demonstrate that a miscarriage of justice will occur if I decline to review this claim.

Accordingly, in addition to dismissing claim two as barred by *Stone*, I conclude that claim two is procedurally barred from federal habeas review due to Turner's procedural default of the claim in state court.

**B.     Claim three does not warrant relief under § 2254(d)(1)**

In Claim Three, Turner alleges that counsel provided ineffective assistance at trial and on appeal by failing to argue that the police used false information in the warrant that misled the magistrate into issuing the second warrant. Turner exhausted state remedies for this claim by presenting it to the Delaware Supreme Court on post-conviction appeal. The Delaware Supreme Court affirmed the Superior Court's denial of the claim as meritless. Consequently, pursuant to § 2254(d)(1), federal habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[1]

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result

---

[1]The *Stone* bar does not apply to ineffective assistance of counsel claims premised on an attorney's failure to raise Fourth Amendment issues. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

10

would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. When, as here, the petitioner premises his ineffective assistance of counsel claims on his counsel's alleged failure to competently litigate Fourth Amendment issues, the petitioner demonstrates actual prejudice by proving "the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman*, 477 U.S. at 375.

It is well-settled that a petitioner has the burden of proving the facts in support of his ineffective assistance claim. *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996); *Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). The petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells*, 941 F.2d at 259-260; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In Turner's case, the Delaware Supreme Court analyzed the instant ineffective assistance of counsel claim within the *Strickland* framework, and concluded that counsel did not perform deficiently because Turner's contentions regarding the allegedly false information provided by the police and prosecutor were conclusory and unsupported by the record. *Turner*, 2004 WL 1535764, at *1. The Delaware Supreme Court also determined that any alleged failure by counsel to raise these issues did not cause prejudice to Turner. *Id.*

The Delaware Supreme Court's decision was neither contrary to, nor an unreasonable application of, *Strickland*. During the suppression hearing, the prosecutor stated that:

> Subsequent to the May 2nd execution of [the first] warrant [the affiant] spoke to the defendant himself who says I live here, and Earl Rose told me about a gun being wrapped up in the back of my property, talked to Earl Rose who says the gun you guys got is not the gun that was on the victim. I was present during the shooting. I live at that place. And, in fact, that guy had a gun, the victim had a gun. You guys did not find it, but he had a gun.

(D.I. 13, App. to Appellant's Op. Br. in *Turner v. State*, No.621,2002, at A11)  Turner contends that the affiant's statement was untrue, and that counsel provided ineffective assistance by failing to challenge the veracity of the statement.  However, as in his state court proceedings, Turner fails to offer any evidence to support his contention that the affiant lied. Without any concrete factual support, Turner cannot demonstrate prejudice under *Strickland*.

Perhaps in an effort to explain the absence of such proof, Turner alleges that his counsel prohibited him from testifying during the suppression hearing.  Even if Turner's allegation is true, the record reveals that the Superior Court did not base its denial of the suppression motion solely on the affiant's statement; rather, the Superior Court's denial was premised on a combination of the evidence presented during the suppression hearing, the search warrant application, and the papers filed.  (D.I. 13, App. to Appellant's Op. Br. in *Turner v. State*, No.621,2002, at A12)  Thus, I conclude that Turner has failed to demonstrate prejudice because he cannot show that his testimony denying the affiant's statement would have changed the outcome of the suppression hearing.

12

Accordingly, I will dismiss claim three because it does not warrant relief under § 2254(d)(1).

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Additionally, if a federal court denies a habeas claim on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Id.

I conclude that Turner's habeas petition must be dismissed, because his claims are either procedurally barred from federal habeas review or they do not warrant relief under § 2254(d)(1). Reasonable jurists would not find these conclusions debatable. Consequently, I decline to issue a certificate of appealability.

## VI. CONCLUSION

For the foregoing reasons, I conclude that Turner's § 2254 petition does not warrant federal habeas relief. I also find no basis for issuing a certificate of appealability. An appropriate order will follow.